1  AARON M. CLEFTON, Esq.  (SBN 318680)
   CLEFTON DISABILITY LAW
2  2601 Blanding Ave, Suite C
   #336
3  Telephone:  510/832-5001
   info@cleftonlaw.com
4
   Attorneys for Plaintiff
5  NICKOLAS RUSANOFF

6                  UNITED STATES DISTRICT COURT

7                NORTHERN DISTRICT OF CALIFORNIA

8

9  NICKOLAS RUSANOFF                 CASE NO. 3:26-cv-00649
                                     Civil Rights
10        Plaintiff,
                                     COMPLAINT FOR PRELIMINARY AND
11                                   PERMANENT INJUNCTIVE RELIEF AND
                                     DAMAGES:
12     v.
                                     1.  **Violations of Americans with Disabilities Act
13                                       of 1990 (42 U.S.C. § 12101 *et seq.*)**

14                                   2.  **Violation of the California Disabled Persons
15  HUDSON PACIFIC PROPERTIES, INC.;     Act (Cal. Civil Code § 54 *et seq.*)**
    PIMCO PRIME REAL ESTATE LLC;
16  UNIVERSAL PROTECTION SERVICE,    3.  **Violation of the California Unruh Act (Cal.
    LP dba ALLIED UNIVERSAL              Civil Code §§ 51 and 52)**
17
                                     DEMAND FOR JURY TRIAL
18        Defendants.

19

20     Plaintiff NICKOLAS RUSANOFF complains of Defendants HUDSON PACIFIC

21  PROPERTIES, INC.; PIMCO PRIME REAL ESTATE LLC; UNIVERSAL PROTECTION

22  SERVICE, LP dba ALLIED UNIVERSAL, and alleges as follows:

23     1.     **INTRODUCTION:**  On November 19, 2025, Plaintiff, a disabled combat veteran

24  and who uses a tasked trained service dog, went to the Ferry Building located at 1 Ferry Building,

25  San Francisco, California, to meet his wife and brother-in-law for ice cream at Gotts. As is his

26  usual practice when he goes out in public, Plaintiff was accompanied by his service dog Nina at

27  the Ferry Building.  When he entered the Ferry Building, Plaintiff was harassed and forced to

28  leave the Ferry Building by security guards due to Nina's presence. As Plaintiff attempted to

1

enter the Ferry Building with Nina, security guards stopped him and told him that he had to put his service dog on a leash, or he would have to leave the Ferry Building. Plaintiff explained that Nina is a service dog and that he is trained to perform certain tasks for Plaintiff which he cannot perform if he is on a leash. Defendants' security guard was then joined by a second security guard, who also told Plaintiff he could not enter the Ferry Building with Nina unless he put his service dog on a leash. Defendants' security team told Plaintiff that it was the Ferry Building's policy that all dogs, even if they are service dogs, must be on a leash.

2.      Plaintiff explained to both security guards, several times, that Nina must be off leash to perform certain tasks for him. He also explained, several times, that this is allowed under the ADA and that they must allow him to have his service dog off leash in the Ferry Building to comply with the ADA. However, the security guards refused to allow Plaintiff to remain in the Ferry Building with his service dog off leash. It was clear that the security guards were following their training that no dogs (even service dogs) could be off leash in the Ferry Building rather than the law. Plaintiff was forced to leave the Ferry Building as a trespasser and missed meeting his wife and brother-in-law. It would have been difficult and unsafe for Plaintiff to continue to be inside the Ferry Building with Nina on leash because she would not be able to perform the tasks necessary for Plaintiff's disability.

3.      The whole experience was difficult, uncomfortable, and embarrassing for Plaintiff, and he felt unsafe and harassed at being forced to leave the Ferry Building or put his service dog on a leash.  This incident made it clear that Defendants do not maintain a service animal policy that complies with Federal and state access laws and has failed to train its employees in how to interact with disabled customers who use service dogs. Much of the interaction was captured on video.

4.      Defendants' decision to remove Plaintiff from the Ferry Building to have his service dog off leash contravenes the Department of Justice guidance on interpreting the ADA. The DOJ's FAQs regarding Services Animals state in relevant part:

**Q27. What does under control mean?  Do service animals have to be on a leash?  Do they have to be quiet and not bark**?

2

A. The ADA requires that service animals be under the control of the handler at all times. In most instances, the handler will be the individual with a disability or a third party who accompanies the individual with a disability.

…

The service animal must be harnessed, leashed, or tethered while in public places unless these devices interfere with the service animal's work or the person's disability prevents use of these devices. In that case, the person must use voice, signal, or other effective means to maintain control of the animal.

…

[A person] who has PTSD and has great difficulty entering unfamiliar spaces may have a dog that is trained to enter a space, check to see that no threats are there, and come back and signal that it is safe to enter. The dog must be off leash to do its job, but may be leashed at other times.

https://www.ada.gov/resources/service-animals-faqs/

5.    The Ferry Building is conveniently located for Plaintiff.  He goes there often for food and shopping, and he intends to return to the Ferry Building in the future but cannot do so until the policies of the Ferry Building are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training.

6.    As a result of Defendants' illegal acts, Plaintiff suffered denial of his civil rights and suffered physical, mental and emotional damages.  Plaintiff must be allowed to have his service dog Nina off leash while at the Ferry Building because it is necessary for her to perform the tasks she is trained to do to ameliorate Plaintiff's disability.  He has brought this lawsuit to force Defendants to change its discriminatory and illegal policies and compensate him for harassing him and refusing to allow him to enter the Ferry Building because he is a disabled person who needs the assistance of his qualified service dog.  Plaintiff seeks an injunction to

3

protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Ferry Building.

7.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

8.    **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

9.    **INTRADISTRICT:**  This case should be assigned to the San Francisco intradistrict because the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

10.    **PARTIES:**  Plaintiff Nickolas Rusanoff is a "qualified" disabled person who uses the assistance of a service dog for retrieval, balance, and interrupting psychiatric symptoms. Plaintiff is a disabled veteran of the Iraq War. He was wounded in action in 2004 after an IED exploded near his location. He suffers from post-traumatic stress disorder (PTSD) with traumatic brain injury, tinnitus, back injury, headaches, and hearing loss. As a result of his disabilities, Plaintiff experiences difficulty with his memory, confusion, paranoia, anxiety, hypervigilance, racing thoughts, and issues with spatial awareness. Both the Veterans Administration and the Social Security administration have determined that Plaintiff is disabled. Plaintiff's disabilities substantially limit many of his major life activities including maintaining relationships, maintaining a consistent sleep schedule, thinking, entering unfamiliar or unsecured space, and being in crowds.

11.    Plaintiff relies on his service dog, a 3-year old pocket labrador named Nina, to assist him with certain tasks to ameliorate his disability.  Plaintiff's service dog has been trained to perform a myriad of tasks to ameliorate his disabilities including but not limited to 1) guiding Plaintiff to an home or to an exit when he is in a situation causing him to panic and he needs to leave; 2) providing crowd control by orbiting Plaintiff to create a barrier around him when he must walk through crowded areas; 3) blocking by standing between Plaintiff and another person;

4

4) alerting Plaintiff of anyone approaching from behind; 5) interrupting Plaintiff when he exhibits certain self-harm behaviors; 6) alerting to the onset of anxiety or fear so that Plaintiff can focus on Nina which helps to calm and redirect him; 7) retrieving dropped objects; 8) turning on lights; 9) pushing buttons for automatic door openers or crosswalks; and 10) alerting for help if Plaintiff falls or loses his balance. Some of the tasks which Nina has been trained to perform require her to be off-leash to perform, including 1) providing crowd control by orbiting Plaintiff because the leash gets wrapped around Plaintiff or stuck between his legs; 2) blocking, and 3) alerting for help if Plaintiff falls.  Whenever Nina is off leash, she continues to remain under Plaintiff's control through voice commands.

12.    Nina has been trained to perform all of these tasks on command and these are not behaviors that Nina has engaged in naturally or without training.  Nina was professionally to the standards of "Service Dogs International" to be a service dog and perform certain tasks, and Plaintiff has continued to individually Nina to perform more tasks throughout their relationship. Plaintiff and Nina have been working together for over one year. Plaintiff continues to reinforce the training with Nina daily.  Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of maintaining relationships, maintaining a consistent sleep schedule, thinking, entering unfamiliar or unsecured space, and being in crowds. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

13.    Defendants HUDSON PACIFIC PROPERTIES, INC. and PIMCO PRIME REAL ESTATE LLC, are and were at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 1 Ferry Building, San Francisco, California known as the Ferry Building.

14.    Defendant UNIVERSAL PROTECTION SERVICE, LP dba ALLIED UNIVERSAL is and was at all times relevant to this Complaint the security provider for the Ferry Building and hired by Defendants HUDSON PACIFIC PROPERTIES, INC. and PIMCO PRIME REAL ESTATE LLC.  Plaintiff is informed and believes that each of the Defendants herein is the agent, employee or representative of each of the other Defendants, and performed all acts and

1  omissions stated herein within the scope of such agency or employment or representative capacity

2  and is responsible in some manner for the acts and omissions of the other Defendants in

3  proximately causing the damages complained of herein.

4       15.     The Ferry Building is a place of "public accommodation" and a "business

5  establishment" subject to the requirements *among other things* of multiple categories of 42 U.S.C.

6  section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code

7  sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

8       16.    **FACTUAL STATEMENT:**  Plaintiff Nickolas Rusanoff has been working with

9  his service dog Nina for over a year.  Nina is a 55 lbs. pocket labrador who was professionally

10  trained to be a service dog by a service dog training organization.  Plaintiff has also trained and

11  continues to train Nina to serve his specific needs throughout their relationship.  Nina has been

12  trained to perform a myriad of tasks to ameliorate Plaintiff's disabilities including but not limited

13  to 1) guiding Plaintiff to an home or to an exit when he is in a situation causing him to panic and

14  he needs to leave; 2) providing crowd control by orbiting Plaintiff to create a barrier around him

15  when he must walk through crowded areas; 3) blocking by standing between Plaintiff and another

16  person; 4) alerting Plaintiff of anyone approaching from behind; 5) interrupting Plaintiff when he

17  exhibits certain self-harm behaviors; 6) alerting to the onset of anxiety or fear so that Plaintiff can

18  focus on Nina which helps to calm and redirect him; 7) retrieving dropped objects; 8) turning on

19  lights; 9) pushing buttons for automatic door openers or crosswalks; and 10) alerting for help if

20  Plaintiff falls or loses his balance.

21       17.    Some of the tasks which Nina has been trained to perform require her to be off-

22  leash to perform, including 1) providing crowd control by orbiting Plaintiff because the leash gets

23  wrapped around Plaintiff or stuck between his legs; 2) blocking, and 3) alerting for help if

24  Plaintiff falls.  Whenever Nina is off leash, she continues to remain under Plaintiff's control

25  through voice commands.

26       18.    Nina is a working dog; she is not a pet.  Plaintiff and Nina have trained extensively

27  together, and they supplement that training daily.  Plaintiff takes Nina everywhere with him in

28  public.  It is important they stay together at all times because (a) Nina provides important services

for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Nina goes.

19.     On the evening of November 19, 2025, Plaintiff arrived at the Ferry Building just before 7 pm. He was accompanied by his task trained service dog, Nina. Plaintiff and Nina had just finished a run along the Embarcadero with Plaintiff's running club, and Plaintiff had plans to meet his wife and brother-in-law at Gott's Roadside to get ice cream. Nina was off leash when she and Plaintiff entered the Ferry Building so that she was free to perform the tasks she is trained to perform to ameliorate Plaintiff's disability. In particular, due to the crowds in the Ferry Building, Plaintiff needs Nina to create space between him and other patrons which requires Nina to be free to circle Plaintiff as required.

20.     Shortly after Plaintiff entered the Ferry Building, he was approached by a security guard later identified as "Elliot," who was employed by Defendant Allied Universal, the private security company providing security services at the Ferry Building.

21.     Elliot told Plaintiff that he was required to put his dog on a leash. At no point during this initial encounter did Elliot ask Plaintiff whether Nina was a service dog, nor did he ask what work or tasks Nina was trained to perform.

22.     Plaintiff informed Elliot that Nina is a service dog and that, due to Plaintiff's disability, Nina must be off leash to perform some of her tasks. Elliot reiterated that Plaintiff needed to have his dog on a leash regardless of whether his dog is a service dog.

23.     In response to Elliot's demand, Plaintiff asked Elliot to look up the Americans with Disabilities Act ("ADA") requirements regarding service animals. Elliot used his phone to locate the relevant ADA provision and read aloud the language stating that service animals are generally required to be leashed unless the leash interferes with the service animal's work or the handler's disability. After Elliot read the law aloud, Plaintiff responded "okay, thank you," and began walking away toward Gott's Roadside to meet his family, believing the issue had been resolved.

24.     Despite Plaintiff's attempt to disengage, Elliot followed him and contacted his supervisor, Amir, who then joined the interaction. The subsequent confrontation between

7

1    Plaintiff, Elliot, and Amir is captured on video.

2        25.    During this interaction, Elliot and Amir continued to insist that Plaintiff either put

3    Nina on a leash or leave the Ferry Building. Plaintiff clearly explained that leashing Nina would

4    interfere with her ability to perform disability-related tasks, and he reiterated that the ADA

5    allowed service animals to be off-leash if it is necessary for them to perform trained tasks to assist

6    their disabled handlers. Neither Elliot or Amir disputed that Nina is a service dog, and neither of

7    them ever asked Plaintiff what work or tasks Nina was trained to perform. Both Elliot and Amir

8    continued to tell Plaintiff that he either needed to place Nina on a leash or leave the Ferry

9    Building.

10        26.    At this point, Plaintiff asked to speak with a supervisor or to have someone else

11   contacted, such as building management or another authority, in order to resolve the issue.

12   Plaintiff's request for further review or escalation was refused, and no alternative reasonable

13   accommodation was offered.

14        27.    Ultimately, Elliot and Amir informed Plaintiff that he would not be permitted to

15   remain in the Ferry Building unless he put a leash on his service dog. Because leashing Nina

16   would interfere with her work and Plaintiff's disability-related needs, Plaintiff was effectively

17   denied access to the Ferry Building and forced to leave. As a result of Defendants' actions,

18   Plaintiff was excluded from a place of public accommodation, separated from his family who

19   were waiting inside, and subjected to discrimination because he is a disabled individual who uses

20   a task trained service dog.

21        28.    Plaintiff has a desire to return to Ferry Building due to the convenient location and

22   wonderful selection of shops and restaurants.  However, Plaintiff is afraid to go back to the Ferry

23   Building because his previous experiences have made it clear that Defendants do not maintain a

24   service animal policy that complies with state and federal access laws.  It is also clear that

25   Defendants' employees have not received training about how to interact with disabled patrons

26   rely on service dogs for assistance.

27        29.    Plaintiff wishes to return to the Ferry Building, but only *after* Defendants have

28   implemented proper service animal policies and training of its staff.  Plaintiff is deterred from

returning to the Ferry Building until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 U.S.C. §§ 12101 *et seq.*)**

30.    Plaintiff repleads and incorporates by reference, as if fully set forth again here, the factual allegations contained in Paragraphs 1 through 29, above, and incorporates them here by reference as if separately repled hereafter.

31.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

32.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.

33.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

34.    The Ferry Building is a public accommodation under Title III of the ADA.  42 U.S.C. § 12181(7)(E).

35.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

9

1    36.    Under the "2010 Revised ADA Requirements: Service Animals," as published by

2   the United States Department of Justice, and distributed by the DOJ's Civil Rights Division,

3   Disability Rights Section, "Generally, title II and title III entities must permit service animals to

4   accompany people with disabilities in all areas where members of the public are allowed to go."

5   ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

6        **Under the ADA, State and local governments, businesses, and nonprofit
        organizations that serve the public generally must allow service animals to
7       accompany people with disabilities in all areas of the facility where the public
        is normally allowed to go.**
8

9   *Ibid.*, emphasis in original.

10    37.    Defendants have a policy and practice of denying access to patrons of the Ferry

11  Building with service animals whose tasks require them to be off leash. The Defendants' decision

12  to exclude service dogs who must be off leash to perform tasks contravenes the Department of

13  Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part,

14  the guidance states:

15   •  A person with a disability cannot be asked to remove his service animal from the

16      premises unless: (1) the dog is out of control and the handler does not take

17      effective action to control it or (2) the dog is not housebroken. When there is a

18      legitimate reason to ask that a service animal be removed, staff must offer the

19      person with the disability the opportunity to obtain goods or services without the

20      animal's presence**.**

21  DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-

22  animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these

23  requirements and state in relevant part:

24       **Q27. What does under control mean?  Do service animals have to

25       be on a leash?  Do they have to be quiet and not bark**?

26       A. The ADA requires that service animals be under the control of the

27       handler at all times. In most instances, the handler will be the individual

28       with a disability or a third party who accompanies the individual with a

1    disability.

2    …

3    The service animal must be harnessed, leashed, or tethered while in

4    public places unless these devices interfere with the service animal's

5    work or the person's disability prevents use of these devices. In that

6    case, the person must use voice, signal, or other effective means to

7    maintain control of the animal.

8    …

9    [A person] who has PTSD and has great difficulty entering unfamiliar

10   spaces may have a dog that is trained to enter a space, check to see that

11   no threats are there, and come back and signal that it is safe to enter. The

12   dog must be off leash to do its job, but may be leashed at other times.

13   https://www.ada.gov/resources/service-animals-faqs/

14   38.    On information and belief, as of the date of Plaintiff's most recent visit to the

15   Ferry Building on or about November 19, 2025, Defendants continue to deny full and equal

16   access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus

17   wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities,

18   privileges, advantages and accommodations of Defendants' premises, in violation of the ADA.

19   39.    In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated

20   as its purpose:

21   It is the purpose of this Act

22   (1) to provide a clear and comprehensive national mandate for the elimination of
     discrimination against individuals with disabilities;

23

24   (2) to provide clear, strong, consistent, enforceable standards addressing discrimination
     against individuals with disabilities;

25   (3) to ensure that the Federal Government plays a central role in enforcing the standards
     established in this Act on behalf of individuals with disabilities; and

26

27   (4) to invoke the sweep of congressional authority, including the power to enforce the
     fourteenth amendment and to regulate commerce, in order to address the major areas of
     discrimination faced day-to-day by people with disabilities.

28

11

42 U.S.C. § 12101(b).

40.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "shopping center." 42 U.S.C. § 12181(7)(E).

41.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendants set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

42.    On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which

discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

43.    Defendants' actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing the Ferry Building and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

44.    Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

45.    Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Ferry Building, in light of Defendants' policy barriers.

WHEREFORE, Plaintiff prays for relief as stated below.

//

**SECOND CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
**PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

46.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 45 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

47.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

48.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

49.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

50.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

51.     The Ferry Building is a public accommodation within the meaning of the CDPA. On information and belief, Defendants are the owner, operator, lessor or lessee of the public

14

1    accommodation.

2        52.    Defendants made the decision to knowingly and willfully exclude Plaintiff and his

3    service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its

4    place of business with his service dog.  As a result of that decision Plaintiff has faced the

5    continuing discrimination of being barred from entering this public accommodation and place of

6    business based on Defendants' illegal prohibition of his legally protected use of his service dog.

7    Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of

8    unpleasant and discriminatory treatment should he seek to return to these facilities.  Plaintiff

9    cannot return to the Ferry Building until he receives the protection of this Court's injunctive

10   relief, and he has continued to suffer discrimination daily since November 19, 2025, all to is

11   statutory damages under California Civil Code §§ 54.1, 54.2, and 54.3.

12       53.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and

13   omissions of Defendants as complained of here which are continuing on a day-to-day basis and

14   which have the effect of wrongfully excluding Plaintiff and other members of the public who are

15   disabled, who require the assistance of service animals, from full and equal access to these public

16   facilities.  Such acts and omissions are the cause of humiliation and mental and emotional

17   suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class

18   citizen and serve to discriminate against him on the sole basis that he is a person with disabilities

19   who requires the assistance of a service animal.

20       54.    Plaintiff wishes to return to patronize the Ferry Building but is deterred from

21   returning to use these facilities, because the lack of access and the significant policy barriers will

22   foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable,

23   so long as such acts and omissions of Defendants continue, to achieve equal access to and use of

24   these public facilities.  Therefore, Plaintiff cannot return to patronize the Ferry Building and its

25   facilities and is deterred from further patronage until these facilities are made properly accessible

26   for disabled persons, including Plaintiff and other disabled individuals who require the assistance

27   of a service animal.

28       55.    The acts of Defendants have proximately caused and will continue to cause

irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendants' inaccessible policies. As to Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

56. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply immediately with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further requests that the Court award damages under Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as prayed below for.

57. **DAMAGES:** Because of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including, but not limited to, rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as stated below. Defendants' actions and omissions to act constitute discrimination against Plaintiff because he was and is disabled and unable, because of the policy barriers created and/or maintained by Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize the Ferry Building and will continue to cause him damages each day these barriers to access and policy barriers are still present.

58. Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendants' behavior was intentional. Defendants were aware and/or were

16

made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendants' establishment of their discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

59.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

60.    Plaintiff suffered damages as above described as a result of Defendants' violations. Damages are ongoing based on his deterrence from returning to the Ferry Building.

WHEREFORE, Plaintiff prays for relief as stated below.

### THIRD CAUSE OF ACTION:
### VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED
### BY CIVIL CODE SECTION 51(f)

61.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again here, the allegations contained in Paragraphs 1 through 60 of this Complaint and incorporates them herein as if separately re-pleaded.

62.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

17

63.     California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

64.     Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

65.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

66.     The actions and omissions of Defendants as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory damages to Plaintiff, according to proof.

67.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure

18

1    section 1021.5 and other applicable law.

2        68.    Plaintiff suffered damages as above-described as a result of Defendants'

3    violations.

4        WHEREFORE, Plaintiff prays for relief as stated below.

5                                   **PRAYER**

6        Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this

7    Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury because of the

8    unlawful acts, omissions, policies, and practices of Defendants as alleged herein, unless Plaintiff

9    is granted the relief he requests.  Plaintiff and Defendants have an actual controversy and

10   opposing legal positions on Defendants' violations of the laws of the United States and the State

11   of California. The need for relief is critical because the rights at issue are paramount under the

12   laws of the United States and the State of California.

13       WHEREFORE, Plaintiff Nickolas Rusanoff prays for judgment and the following

14   specific relief against Defendants:

15       1.    An order enjoining Defendants, its agents, officials, employees, and all persons

16   acting in concert with them:

17           a.   From continuing the unlawful acts, conditions, and practices described in this

18               Complaint;

19           b.   To modify its policies and practices to accommodate service dog users in

20               conformity with federal and state law, and to advise Plaintiff that his service dog

21               will not be excluded for being off leash should he desire to enter and use the

22               services of the Ferry Building;

23           c.   That the Court issue preliminary and permanent injunction directing Defendants as

24               current owner, operator, lessor, and/or lessee and/or its agents of the subject

25               property and premises to modify the above described property, premises, policies

26               and related policies and practices to provide full and equal access to all persons,

27               including persons with disabilities; and issue a preliminary and permanent

28               injunction under ADA section 12188(a) and state law directing Defendants to

provide facilities usable by Plaintiff and similarly situated persons with
disabilities, and which provide full and equal access, as required by law, and to
maintain such accessible facilities once they are provided and to train Defendants'
employees and agents in how to recognize disabled persons and accommodate
their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendants have fully complied
with the orders of this Court, and there is a reasonable assurance that Defendants
will continue to comply in the future absent continuing jurisdiction;

2.    An award to Plaintiff of statutory, actual, general, and punitive damages in
amounts within the jurisdiction of the Court, all according to proof;

3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California
Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise
permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4.    An award of prejudgment interest under Civil Code § 3291;

5.    Interest on monetary awards as permitted by law; and

6.    Grant any other relief that this Court may deem just and proper.

Date: January 21, 2026                CLEFTON DISABILITY LAW

                                        */s/ Aaron M. Clefton*
                                  By AARON M. CLEFTON, Esq.
                                  Attorneys for Plaintiff
                                  NICKOLAS RUSANOFF

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: January 21, 2026                CLEFTON DISABILITY LAW

                                          */s/ Aaron M. Clefton*
                                  By AARON M. CLEFTON, Esq.
                                  Attorneys for Plaintiff
                                  NICKOLAS RUSANOFF

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES